KAREN NELSON MOORE, Circuit Judge,
concurring in the judgment only.
I must concur with the majority’s conclusion that Olive’s money-laundering conviction (Count 9), 18 U.S.C. § 1957 (2006),[1] *760 did not merge with his mail-and wire-fraud convictions because I am bound by this court’s prior published opinions, United States v. Kratt, 579 F.3d 558, 560 (6th Cir.2009), and Jamieson v. United States, 692 F.3d 435, 440 (6th Cir.2012) (per curiam) (holding that mail fraud and money laundering do not merge). I do not believe, however, that this is the correct result under United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). I conclude that Kratt’s holding— that “proceeds” “means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase” — was wrong. 579 F.3d at 562. In particular, the focus on whether the § 1957 offense “radically] inerease[s] ... the statutory maximum sentence,” id., is an inaccurate characterization of the holding of Santos. The appropriate application of Santos requires vacating Olive’s sentence and remanding the case to the district court for resentenc-ing, but as long as Kratt remains the law of this circuit, I must join the majority’s judgment.
Olive contends that there is insufficient evidence in the record to uphold his conviction for money laundering in violation of § 1957 because the government did not prove that he used the profits — rather than gross receipts — of his mail-fraud scheme in order to pay Anthony Heuer-mann, a financial advisor, a commission for referring one of his clients to NFOA.[2] Appellant Br. at 27. Olive argues that the commission payments were “essential expenses of operating” the mail-fraud scheme, and therefore his convictions for mail fraud and money laundering “merge.” Santos, 553 U.S. at 527-28, 128 S.Ct. 2020 (Stevens, J., concurring).
Olive concedes that he did not argue in the district court that his money-laundering conviction merged with the mail-fraud conviction, and therefore we must review his claim for plain error. Appellant Reply Br. at 15 (citing United States v. Crosgrove, 637 F.3d 646, 656 (6th Cir.2011)). We may reverse Olive’s money-laundering conviction if (1) the government was required to prove as a matter of law that Olive used the profits of his fraud scheme to pay commissions, which it did not do; (2) the error was plain; (3) the error affects Olive’s substantial rights; and (4) the error “seriously affects the fairness, integrity or public reputation of the judicial proceedings.” Crosgrove, 637 F.3d at 656.
18 U.S.C. § 1957(a) prohibits “knowingly engaging] or attempting] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified un *761 lawful activity.” Wire fraud is among the numerous predicate offenses. See id. § 1957(f)(3) (“[T]he term[] ‘specified unlawful activity’ ... shall have the meaning given [that] term[ ] in section 1956 of this title.”); id. § 1956(c)(7)(A) (“[T]he term ‘specified unlawful activity’ means ... any act or activity constituting an offense listed in section 1961(1) of this title.... ”); id. § 1961(1) (listing mail fraud, 18 U.S.C. § 1341). “[T]he term ‘criminally derived property means any property constituting or derived from, proceeds obtained from a criminal offense....” Id. § 1957(f)(2).
In Santos, the Supreme Court attempted to define the term “proceeds” within the meaning of § 1956, 553 U.S. at 510-11, 128 S.Ct. 2020 (plurality), which has the same meaning under § 1957. Kratt, 579 F.3d at 560. “ ‘Proceeds’ can mean either ‘receipts’ or ‘profits,’ ” and thus the Court concluded that the term was inherently ambiguous. Santos, 553 U.S. at 511, 128 S.Ct. 2020 (plurality). The Court considered whether the context of the money-laundering statute clarified the meaning of the term “proceeds,” but four of the Justices believed that it did not. See id. at 513-14, 128 S.Ct. 2020. Because the term “proceeds” remained ambiguous even when read in the context of the whole statute, four Justices concluded that the rule of lenity requires reading “proceeds” to mean “profits” — the “more defendant-friendly” meaning of “proceeds” because “[f]ew crimes are entirely free of cost[,] ... [a]nd any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares.” Id. at 514, 516, 128 S.Ct. 2020. According to the plurality, “the felon who uses the stolen money to pay for the rented getaway car ... would violate the money-laundering statute.” Id. at 516, 128 S.Ct. 2020.
Justice Alito wrote the dissent signed by three additional Justices, arguing that the term “proceeds” must mean “gross receipts” for every predicate offense. See id. at 531-49, 128 S.Ct. 2020. Justice Breyer joined the dissent, but wrote separately to emphasize that he, too, observed and was troubled by “the ‘merger’ problem” because he found it “difficult to understand why Congress would have intended the Government to possess this punishment-transforming power.” Id. at 529-31, 128 S.Ct. 2020. Justice Breyer believed that there were other legal avenues to mitigate the unfairness of “the ‘merger’ problem,” which he believed “is essentially a problem of fairness in sentencing,” which the Sentencing Commission could solve by crafting appropriate Sentencing Guidelines. Id.
Justice Stevens concurred in the judgment, and thus no opinion garnered a majority of the Justices’ votes. “[T]he ‘position taken by those [Justices] who concurred in the judgment[ ] on the narrowest grounds’ represents its holding,” Kratt, 579 F.3d at 562 (quoting Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)), and therefore Justice Stevens’s concurring opinion represents the holding of Santos, 553 U.S. at 523, 128 S.Ct. 2020 (plurality). He believed that “proceeds” could mean “gross receipts” with respect to some, but not all predicate offenses. Id. at 526, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment). For example, Justice Stevens concluded that Congress had demonstrated its intent to criminalize the use of gross receipts generated by “the sale of contraband and the operation of organized crime syndicates involving such sales.” Id. at 526, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment). He acknowledged, however, that the legislative history for those two predicate offenses “shed[ ] no light on how to identify *762 proceeds under” the other predicate offenses. Id. And “[t]he consequences of applying a ‘gross receipts’ definition of ‘proceeds’ to” certain predicate offenses were “so perverse that” Justice Stevens could not “believe they were contemplated by Congress.” Id. This “perverse” result was “[ajllowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense,” which “is in practical effect tantamount to double jeopardy.” Id. at 527, 128 S.Ct. 2020. According to Justice Strevens, absent an “explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime,’ ” the rule of lenity required defining “proceeds” as “profits.” Id. at 528, 128 S.Ct. 2020 (quoting plurality, id. at 517, 128 S.Ct. 2020).
The Santos plurality, except Justice Thomas, offered their own interpretation of Justice Stevens’s narrow holding: “ ‘[Pjroceeds’ means ‘profits’ when there is no legislative history to the contrary.” Santos, 553 U.S. at 523, 128 S.Ct. 2020 (plurality). Justice Stevens disagreed with the plurality’s characterization of the holding and attempted to clarify his reasoning:
In what can only be characterized as the “purest of dicta,” the plurality speculates about the stare decisis effect of our judgment and interprets my conclusion as resting on the ground that “ ‘proceeds’ means ‘profits’ when there is no legislative history to the contrary.” ... That is not correct; my conclusion rests on my conviction that Congress could not have intended the perverse result that the dissent’s rule would produce if its definition of “proceeds” were applied to the operation of an unlicensed gambling business. In other applications of the statute not involving such a perverse result, I would presume that the legislative history summarized by JUSTICE ALITO reflects the intent of the enacting Congress.
Id. at 528 n. 7, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment) (citation omitted). The “perverse result” that troubled the plurality, Justice Stevens, and Justice Breyer was “[ajllowing the Government to treat the mere payment of the expense of operating [the] illegal business ... as a separate offense,” which “is in practical effect tantamount to double jeopardy.” Id. at 527, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment). In other words, Justice Stevens was concerned about “the merger problem.”
In Kratt, this court interpreted Justice Stevens’s concurrence to mean that we should compare the maximum sentences of § 1956 or § 1957 with the statutory maximum sentence for the predicate offense in order to determine whether interpreting “proceeds” to mean “gross receipts” in the money-laundering statute results in “a radical increase of the statutory maximum.” 579 F.3d at 562. For example, if the predicate offense carried a statutory maximum penalty of five years, and the statutory maximum penalty for money laundering is twenty years, then the Kratt court would conclude that “proceeds” must mean “profits.” See id. at 561-62 (describing the statutory maximum penalties in Santos). The Kratt panel never explained whether an increase in the statutory maximum sentence from five to ten years was “radical.” See id. at 562.
I believe that the Kratt panel inaccurately described Justice Stevens’s concurrence and announced an unwise method of statutory interpretation. First, Justice Stevens did not state that a difference between the statutory maximum sentences for money laundering and illegal *763 gambling was necessary in order for “proceeds” to be defined as “profits.” Rather, the sentence Santos received “was just a symptom of the unfairness of the merger that [Justice Stevens’s] opinion was crafted to avoid.” Garland v. Roy, 615 F.3d 391, 404 (5th Cir.2010).
Second, Justice Stevens wrote that “there is no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime.” Santos, 553 U.S. at 528, 128 S.Ct. 2020 (Stevens, J., quoting plurality, id. at 517, 128 S.Ct. 2020). The Kratt court interpreted this to mean the statutory maximum sentence, 579 F.3d at 562, but that reading is completely untethered from what Stevens actually wrote. A sentence may “radically increase” even if the statutory maximum does not; a defendant is doubly punished for the same conduct if “proceeds” means “gross receipts” when a district judge sentences the defendant to consecutive sentences on separate counts. For example, if a defendant is convicted of mail fraud, which carries a statutory maximum penalty of twenty years, see 18 U.S.C. § 1341, and money laundering for which the statutory maximum sentence is ten years, see id. § 1957(b), then nothing prevents a district court from imposing a thirty-year sentence for the same conduct — save perhaps an appellate court finding that the district court abused its discretion. Indeed, the (non-mandatory) Sentencing Guidelines require that the district court impose consecutive sentences when the punishment prescribed by the Guidelines exceeds the statutory maximum penalty allowed under “the count carrying the highest statutory maximum.” U.S.S.G. § 5G1.2(d) & cmt. n. 1 (2013). In that case, a sentencing judge could impose ten- and twenty-year sentences to run consecutively. That sentence would receive a presumption of reasonableness on appeal, see Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), and a sentencing judge could impose consecutive sentences even if the Guidelines did not suggest the imposition of consecutive sentences because the Guidelines are, of course, not binding, and a sentence may be for any period of time within the statutory range, United States v. Booker, 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The consecutive sentences are possible only because the defendant has been convicted of both mail fraud and money laundering; he could not receive a thirty-year sentence for mail fraud alone. This result is just as “perverse” as an increase in the statutory maximum, and thus it is unlikely that Congress intended this result.
Third, each of our sibling circuits has read, parsed, and interpreted Justice Stevens’s concurrence, and only one other circuit has considered a “radical increase in the statutory maximum sentence” to be outcome-determinative. Most of our colleagues interpret the term “proceeds” to mean “profits” when interpreting “proceeds” as “gross receipts” results in a “merger problem,” i.e., punishing the defendant a second time for paying the essential expenses of his criminal enterprise. See, e.g., United States v. Foley, 783 F.3d 7, 15-16 (1st Cir.2015) (“[W]e find no merger problem and thus no basis for limiting ‘proceeds’ to profits.... ”); United States v. Peters, 732 F.3d 93, 100 (2d Cir.2013) (“[T]he criminal forfeiture statute presents no merger issue.... Because the concerns uniting Justice Stevens’s concurrence and the plurality in Santos do not apply in the context of criminal forfeiture, Santos does not control the question of how to interpret ‘proceeds’....”); United States v. Richardson, 658 F.3d 333, 340 (3d *764 Cir.2011) (holding that ‘proceeds’ means ‘receipts’ when “the merger problem that impelled a majority of the Supreme Court to throw out Santos’[s] conviction is not present”); United States v. Rubashkin, 655 F.3d 849, 865-66 (8th Cir.2011) (holding that “proceeds” meant “gross receipts” because the underlying predicate offense— making false statements and reports to a bank — was “a distinct offense compared to money laundering” and did not result in a merger problem); United States v. Van Alstyne, 584 F.3d 803, 815 (9th Cir.2009) (“Santos suggests ... that the ‘profits’ definition of ‘proceeds’ should apply where the particular crime at issue depends on necessary payments.... ”); United States v. Lee, 558 F.3d 638, 643 (7th Cir.2009) (reversing a money-laundering conviction because the jury may have convicted the defendant for payment of wages, rent, and advertising expenses for massage parlors — essential expenses of the underlying prostitution business).
The Fifth Circuit takes a slightly different approach; it first determines whether “defining ‘proceeds’ as ‘gross receipts’ would result in the ‘perverse result’ of the ‘merger problem.’ ” Garland, 615 F.3d at 402 (quoting Santos, 553 U.S. at 528 n. 7, 128 S.Ct. 2020 (Stevens, J., concurring)). If defining “proceeds” as “gross receipts” does not result in a merger problem, then the Fifth Circuit presumes that “ ‘proceeds’ should be defined • as ‘gross receipts,’ ” unless the legislative history suggests otherwise.[3] Id.
The Fourth, Tenth, and Eleventh Circuits have confined the holding of Santos to meaning that “ ‘proceeds’ means ‘profits’ for the purpose of the money laundering statute only where an illegal gambling operation is involved” — the two. offenses with which Santos was charged. United States v. Thornburgh, 645 F.3d 1197, 1209 (10th Cir.2011);[4] see also United States v. Simmons, 737 F.3d 319, 324 (4th Cir.2013) (“[W]e interpreted Santos narrowly to bind lower courts only in cases where illegal gambling constituted the predicate for the defendant’s money-laundering conviction.”); United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir.2009) (“The narrow holding in Santos, at most, was that the gross receipts of an unlicensed gambling operation were not ‘proceeds’ under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an *765 enterprise engaged in illegal drug trafficking.”). Becently, however, the Fourth and Eleventh Circuits have broadened their interpretations of Santos to apply beyond illegal gambling where necessary to avoid a double-punishment problem. See United States v. Esquenazi, 752 F.3d 912, 935-36 (11th Cir.2014) (“Conducting a criminal enterprise necessarily requires paying its essential expenses — doing so should not also be separately punishable as money-laundering. ...”); Simmons, 737 F.3d at 324 (“But, because the merger problem provided the ‘driving force’ behind both the plurality’s and Justice Stevens’s opinions, we recognized that Santos compelled us to construe the money-laundering statute so as to avoid punishing a defendant twice for the same offense.”).
Many of our sibling circuits have acknowledged that this circuit interprets “proceeds” to “ ‘mean[ ] profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase.’ ” See, e.g., Van Alstyne, 584 F.3d at 814 (quoting Kratt, 579 F.3d at 562); Garland, 615 F.3d at 403 (quoting Kratt, 579 F.3d at 562); United States v. Garcia-Pastrana, 584 F.3d 351, 380 (1st Cir.2009) (quoting Kratt, 579 F.3d at 562). But none have explicitly adopted this rule. Indeed, the Fifth Circuit has expressly rejected this circuit’s approach because “Justice Stevens did not state that the defendant needed to suffer a harsh increase in his sentence in order for ‘proceeds’ to be defined as ‘profits.’ ” Garland, 615 F.3d at 404.
Only the Ninth Circuit has “considered whether the inclusion of the money-laundering charge under Section 1957 led to ‘a radical increase in the statutory maximum sentence’ for the underlying offense” when applying Santos. United States v. Bush, 626 F.3d 527, 538 (9th Cir.2010). However, the Ninth Circuit’s eases do not clearly indicate that the statutory maximum sentences determine the outcome of the analysis. In Bush, after concluding that “none of the transactions from Bank Crozier to [the defendant] was ‘central to carrying out the scheme’s objective[s],’ ” a panel of the Ninth Circuit observed that the defendant “received five additional years for his money laundering — hardly a ‘radical’ disparity from the twenty-five-year sentence for his various frauds.” 626 F.3d at 538 (citing Kratt, 579 F.3d at 562). Similarly, in United States v. Phillips, after concluding that the defendant’s money-laundering and fraud convictions did not pose a merger problem and thus plain error did not exist, the Ninth Circuit noted in a footnote that the money-laundering convictions did not have a greater statutory maximum sentence than the fraud convictions. 704 F.3d 754, 766 & n. 11 (9th Cir.2012) (citing Bush, 626 F.3d at 538). In United States v. Grasso, a divided panel concluded that Bush and Phillips require “considering] whether the inclusion of the money laundering charges leads to ‘a radical increase in the statutory maximum sentence for the underlying offense.’ ” 724 F.3d 1077, 1092 & n. 15 (9th Cir.2013) (quoting Bush, 626 F.3d at 538 (quoting Kratt, 579 F.3d at 562)). Judge Berzon dissented because she believed that “it is far from clear that under [Ninth-Circuit] case law, the extent of the increase in the statutory maximum sentence is a relevant consideration in determining whether the merger problem exists.” Id. at 1100 (Berzon, J., dissenting). Judge Berzon explained that the Van Al-styne panel had “noted” the Sixth Circuit’s approach, but had “construed the Santos plurality and concurrence differently from the Sixth Circuit, holding that there was a merger problem based on the defendant’s *766 conviction for both mail fraud and money laundering, without regard to the applicable statutory máximums — 30 years for mail fraud and 20 years for money laundering.” Id. at 1100-01 (emphasis added). Judge Berzon criticized the panel majority for following Kratt and Bush rather than the Ninth Circuit’s earlier binding precedent.
I believe that the Fifth Circuit has formulated the most accurate statement of Justice Stevens’s Santos concurrence, and that we should have adopted a similar approach to apply to money-laundering offenses that occurred prior to May 20, 2009. See Rubashkin, 655 F.3d at 864 n. 3. Accordingly, “proceeds” should mean “profits” under 18 U.S.C. § 1956 and § 1957 when there is a “merger problem,” e.g., when the government has charged the defendant with money laundering for the payment of the necessary expenses of the predicate crime. Garland, 615 F.3d at 402; see also Van Alstyne, 584 F.3d at 815 (“[T]he ‘profits’ definition of ‘proceeds’ should apply where the particular crime at issue depends on necessary payments .... ”). If the money-laundering and predicate offenses do not cause a merger problem, then we must presume that “proceeds” means “gross receipts” unless the legislative history of the money-laundering statute shows that Congress intended that “proceeds” be defined as “profits.” Garland, 615 F.3d at 401-02.
Under the proper application of Santos, we should vacate Olive’s conviction for money laundering (Count 9) and remand his case for resentencing because his money-laundering conviction merges with his mail-and wire-fraud convictions. To determine whether there is a merger, we should examine “the concrete details of the particular ‘scheme to defraud,’ ” Van Alstyne, 584 F.3d at 815, in order to determine whether the government has charged Olive for merely “paying the essential expenses of operating the underlying crime.” Simmons, 737 F.3d at 324 (internal quotation marks omitted).
This leads to the question:, What are the “essential expenses” of a scheme to defraud? This court and our sibling circuits have consistently held that commissions or salary payments may be “essential expenses” of a scheme to defraud. In United States v. Cloud, the Fourth Circuit found held that “essential expenses” of a mortgage-fraud scheme were commissions to recruiters who referred buyers with good credit to the defendant to purchase the properties involved in the fraud scheme. 680 F.3d 396, 399, 406 (4th Cir.2012). In United States v. Abdulwahab, the Fourth Circuit held that commission payments to sales agents “played a critical role in the underlying fraud scheme” because the defendant promised payments for the referrals, which enticed the sales agents to obtain investors in the defendant’s business. 715 F.3d 521, 531 (4th Cir.2013). And we have held that salary payments to employees of fake insurance companies constituted essential expenses of the insurance-fraud scheme. Crosgrove, 637 F.3d at 655-56.
Olive’s scheme to defraud relied upon highly compensating financial advisors who referred their clients to NFOA. In the indictment, the government alleged that Olive used “highly compensated insurance agents across the country, [who] offered and sold investment contracts labeled as NFOA’s ‘Installment Plan Agreement.’ ” R. 1 at 2 (Indictment ¶ 8) (Page ID # 2). In addition, evidence at trial established that financial advisors recommended NFOA’s Installment Plan Agreement to their clients, and Olive paid handsome commissions to those financial advisors who referred their clients to NFOA. Olive paid financial advisors approximately 9% *767 of the total funds he received from the funds received from financial advisors’ clients. R. 135 at 190 (Tr. Trial Vol. 5) (Page ID # 2167). These commissions were paid “for bringing the business to NFOA.” Id. at 235 (Page ID # 2212). Indeed, Olive created a promotional video to show financial advisors, advertising that “[e]xchang[ing] a client’s indexed annuity for a new annuity at the accumulated value” had two benefits: “Your client receives a tax deduction and you earn 9%.” R. 131 at 104-05 (Tr. Trial Vol. 1) (Page ID # 1128-29). Thus, NFOA depended upon these financial advisors to bring NFOA clients, the commission payments to the advisors were part of the scheme to defraud, and those commissions were “essential expenses” of the scheme. Because this is a classic example of “the merger problem,” the fraud and money-laundering convictions should merge, and there is no need to consult the legislative history of these statutes. See Garland, 615 F.3d at 402, 404.
The majority and I therefore agree that Olive’s money-laundering and fraud convictions present a merger problem. I would also conclude that the double charging was plain error because the government quite clearly indicted Olive in the money-laundering count for the payment of essential expenses of his fraud scheme and never presented evidence that Olive paid Heuer-mann commission with the profits of his fraud scheme. In addition, I believe that the double charging affected Olive’s substantial rights because Olive was exposed to the possibility of an additional ten-year prison term as a result of the money-laundering conviction, and the district court actually used the money-laundering conviction to add sixty months to Olive’s sentence. See Crosgrove, 637 F.3d at 657. Nevertheless, I am bound by Kratt and its progeny until the Supreme Court or this court sitting en bane overrules it. 6th Cir. R. 32.1(b). In sum, because there is not a “radical increase in the statutory maximum sentence” when we compare the statutory maximum sentences for money laundering and mail or wire fraud, under this Circuit’s present law I must concur in the judgment.

. In 2009, Congress amended 18 U.S.C. § 1956 to define “proceeds" as “any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.” 18 U.S.C. § 1956(c)(9) (2012). Apparently, Congress intended the “perverse re-suit” that troubled six of the Justices in Santos. Because Olive's conduct occurred before May 20, 2009, however, the former statutory language of 18 U.S.C. § 1956 and § 1957 applies. United States v. Rubashkin, 655 F.3d 849, 864 n. 3 (8th Cir.2011).

. The precise nature of Olive’s claim is a little unclear. On the one hand, he argues that “the evidence presented at trial [established that] the commission payment to Mr. Heuer-mann is encompassed by the conduct charged in Count 2 and [is] merely ... commission payments made to each financial advisor who completed a sale of a NFOA product to one of their clients.” Appellant Br. at 27. The government contends that Olive has asserted that there was a double-jeopardy error. Appellee Br. at 43-44. In reply, Olive clarified his argument; he explained that, under Santos, the government could not punish him "twice for two separate offenses if the conduct underlying one offense (money laundering) was necessary to the conduct underlying another (specified criminal activity).” Appellant Reply Br. at 15 n. 3. Thus, Olive contends that the government had to prove that Olive paid Heuermann with the profits of his fraud scheme, which it did not, and therefore the money-laundering and fraud counts are dupli-cative. Id. Both Olive and the government agree that Olive has alleged a legal error and that this court is limited to plain-error review. Appellee Br. at 43-44; Appellant Reply Br. at 15.

. The Second Circuit has suggested agreement in dicta with the Fifth Circuit’s approach. See United States v. Quinones, 635 F.3d 590, 599 (2d Cir.2011). The Second Circuit commented that "the desire to avoid a 'merger problem’ united five Justices in holding that Santos’s payments did not constitute money laundering.’’ Id. But the court observed that focusing on the merger problem alone "overlooks Justice Stevens’s statement that 'the legislative history of § 1956 makes it clear that Congress. intended the term 'proceeds’ to include gross revenues from the sale of contraband and the operation of organized criminal syndicates involving such sales’ and Justice Stevens's disagreement with the plurality’s position that ‘the rule of lenity must apply to the definition of 'proceeds’ for these types of unlawful activities.’ " Id.' (quoting Santos, 553 U.S. at 525-26 & n. 3, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment)). The Second Circuit thus held that " 'proceeds' under 18 U.S.C. § 1956 is not limited to ‘profits' at least where ... the predicate offense involves the sale of contraband” and declined to "address the proper interpretation of 'proceeds’ under Santos where the predicate offense does not involve the sale of contraband.” Id. at 600 & n. 5.

. In Thornburgh, the Tenth Circuit was limited to plain-error review, but concluded that the district court had not erred because the holding of Santos was limited, and even if there had been an error, the error was not plain,